**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RYAN SHAPIRO, *et al.*

        Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
JUSTICE,

        Defendant.

Civil Action No. 12-1883 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The Executive Office for United States Attorneys ("EOUSA") denied a Freedom of

Information Act ("FOIA") request for records, which are maintained in a Freedom of

Information and Privacy Brief Bank ("Brief Bank") and accessible on the Department of

Justice's intranet, on grounds that the Brief Bank and any records contained in it are protected by

the attorney work product doctrine and, thereby, exempt from disclosure under FOIA exemption

(b)(5). 5 U.S.C. § 552(b)(5) ("Exemption 5"); Def.'s Mem. Supp. Mot. Summ. J. ("Def's

Mem.") ECF No. 12, at 2. Pending before the Court is the defendant's Motion for Summary

Judgment, under Federal Rule of Civil Procedure 56. For the reasons set forth below, the

defendant's motion is denied.

## I.     BACKGROUND

On September 13, 2011 the plaintiff, Jeffrey Stein[1] ("Stein" or "the plaintiff"), filed a

FOIA request with the EOUSA seeking "a copy of all records in the Freedom of Information and

---

[1] As indicated by the case caption, this case was originally filed by four plaintiffs, including Stein, challenging in
thirteen claims some aspect of five DOJ components' responses to approximately 145 FOIA requests. *See* Compl.,
ECF No. 1, *generally*. Due to the disparate, unrelated nature of the claims, the Court granted the defendant's motion
to sever, and severed Counts One through Twelve of the Complaint, retaining only Count Thirteen, which is at issue

Privacy Brief Bank linked on the Department of Justice ("DOJ") intranet page

http://dojnet.doj.gov/research_resources/briefs.php." Def.'s Statement of Material Facts As To

Which There Is No Genuine Issue ("Def.'s SMF"), ECF No. 12-1, ¶ 1; *see also* Compl., ECF

No. 1., ¶¶153–162.[2] The defendant's description of the Brief Bank includes no information

about when this resource was created and how long it has been used as a resource; how

frequently it is updated; how many records it contains or how many cases are referenced in it;

how often it is accessed or used; or how burdensome, if at all, it would be to disclose the Brief

Bank, in whole or in part.

The sparse information provided by the defendant about the Brief Bank indicates that it is

"maintained on the [DOJ]'s intranet" and is "only available to and accessible by [DOJ]

personnel." Declaration of Sean J. Vanek ("Vanek Decl."), ECF No. 12-2, ¶ 16. The defendant

further states that the Brief Bank "was created and maintained by an attorney on the EOUSA's

FOIA and Privacy Act Staff" and that it is "a tool for use in anticipated FOIA litigation." *Id.* ¶

17. The Brief Bank is comprised of six categories of records: (1) "selected filings from FOIA

lawsuits filed around the country" in federal courts, *id.* ¶ 18; (2) "basic case-caption

information," for each case entry, *id.* ¶ 19; (3) "a brief summary of the issues involved" for each

case entry, *id.*; (4) for "some case entries," "what the author of the brief bank considered 'key

issues' [which] are linked to the specific briefs that address these issues," *id.* ¶ 20; (5) "the author

of the brief, the date it was filed, and . . . the specific component of the Department of Justice in

---

in the pending motion. *See* Memorandum and Order, dated April 17, 2013, ECF No. 28, at 7. In granting the motion to sever, the Court noted that the "sort of catch-all pleading" the plaintiffs appeared to have engaged in "has a tendency to delay, rather than expedite, the Court's consideration of [FOIA] cases because dispositive motions are inevitably filed in piecemeal fashion." *Id.* at 6. Although, following severance, the only remaining plaintiff is Jeffrey Stein, the case's caption remains unchanged.

[2] The plaintiff admits all of the facts enumerated in the defendant's Statement of Material Facts and supplemented those facts in his response with the addition "that a significant amount of material in the brief bank has been previously filed on the public record in court cases across the United States." *See* Pl.'s Response to Def.'s SMF, ECF No. 18, at 13.

which the author of the brief works," *id.* ¶ 21; and (6) "[f]or some case entries, the supporting

declarations that formed the factual foundation of the brief are included for reference purposes,"

*id.* ¶ 22.

EOUSA denied the plaintiff's FOIA request, stating "the brief bank was being withheld

in its entirety pursuant to FOIA exemptions (b)(5), (b)(7)(C), and (b)(7)(E)." *Id.* ¶ 10. The

plaintiff timely appealed the denial and his request was remanded to the EOUSA for further

processing. *Id.* ¶ 13. EOUSA had not responded to the remand by the time this lawsuit was filed

in November, 2012. *Id.* ¶ 14. In its pending motion for summary judgment, EOUSA relies

solely on the attorney work product privilege under Exemption 5 to justify the withholding of the

Brief Bank and any records it contains. *Id.* ¶ 15.[3]

## II.    LEGAL STANDARD

### A.  FOIA

Congress enacted the FOIA, 5 U.S.C. § 552, "'to pierce the veil of administrative secrecy

and to open agency action to the light of public scrutiny.'" *Am. Civil Liberties Union v. U.S.

Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S.

352, 361 (1976)). The Supreme Court has explained that the FOIA is "a means for citizens to

know 'what their Government is up to.' This phrase should not be dismissed as a convenient

formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records

Admin. v. Favish*, 541 U.S. 157, 171–172 (2004) (citation and internal quotation marks omitted).

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a

democratic society, needed to check against corruption and to hold the governors accountable to

---

[3] Although, during administrative proceedings, the defendant justified its withholding of the Brief Bank on the
additional bases of  5 U.S.C. §§ 552 (b)(7)(C) and (b)(7)(E), Vanek Decl. ¶ 10, those grounds for withholding have
not been reasserted in this litigation. *Id.* ¶ 15. These alternative statutory exemptions for withholding have therefore
been waived since agencies are required "to invoke all FOIA exemptions 'at the same time, in the original district
court proceedings.'" *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009) (quoting *August v. FBI*, 328 F.3d 697, 699
(D.C. Cir. 2003) and *Maydak v. Dep't of Justice*, 218 F.3d 760, 764-65 (D.C. Cir. 2000)).

the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As a result, the

FOIA requires federal agencies to release all records responsive to a request for production. *See*

5 U.S.C. § 552(a)(3)(A). Federal courts are authorized under the FOIA "to enjoin the agency

from withholding agency records and to order the production of any agency records improperly

withheld from the complainant." *Id.* § 552(a)(4)(B).

This strong interest in transparency must be tempered, however, by the "legitimate

governmental and private interests [that] could be harmed by release of certain types of

information." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)

(internal quotation marks omitted); *see also Critical Mass Energy Project v. Nuclear Regulatory

Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc). Accordingly, Congress included nine

exemptions permitting agencies to withhold information from FOIA disclosure. *See* 5 U.S.C.

§ 552(b). "These exemptions are explicitly made exclusive, and must be narrowly construed."

*Milner v. U.S. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (citations and internal quotation

marks omitted); *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C.

Cir. 2010) ("FOIA allows agencies to withhold only those documents that fall under one of nine

specific exemptions, which are construed narrowly in keeping with FOIA's presumption in favor

of disclosure.") (citations omitted). When a FOIA requester properly exhausts its administrative

remedies, he may file a civil action challenging an agency's response to its request. *See* 5 U.S.C.

§ 552(a)(4)(B); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Once such an action is filed,

the agency generally has the burden of demonstrating that its response to the plaintiff's FOIA

request was appropriate. *See id.* at 678.

### B. Summary Judgment

It is typically appropriate to resolve FOIA cases on summary judgment. *See Brayton v.

Ofc. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("the vast majority of FOIA

cases can be resolved on summary judgment"). When an agency's response to a FOIA request is to withhold responsive records, either in whole or in part, the agency "bears the burden of proving the applicability of claimed exemptions." *Am. Civil Liberties Union v. U.S. Dep't of Def.* ("*ACLU/DOD*"), 628 F.3d 612, 619 (D.C. Cir. 2011). The government may sustain its burden of establishing that requested records were appropriately withheld through the submission of declarations detailing the reason that a FOIA exemption applies, along with an index, as necessary, describing the materials withheld. *See, e.g.*, *ACLU/DOD*, 628 F.3d at 619; *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001); *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU/DOD*, 628 F.3d at 619. As the D.C. Circuit recently explained, in FOIA cases "'[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv*., No. 11-5282, 2013 U.S. App. LEXIS 18119, at *14 (D.C. Cir. Aug. 30, 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) and *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)). While the burden remains on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), in FOIA cases, "an agency's justification for invoking a FOIA exemption is

sufficient if it appears 'logical' or 'plausible.'" *ACLU/DOD*, 628 F.3d at 619 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## III. DISCUSSION

The defendant rests its withholding decision solely on the assertion that both the compilation of records in the Brief Bank and each category of records maintained in this bank, are attorney work product and exempt under Exemption 5. *See* Def.'s Mem., at 7. The plaintiff contends otherwise, arguing that the bulk of the records in the brief bank are ineligible for any withholding exemption since they have been publicly disclosed and, to the extent that certain categories of records have not been publicly disclosed, Exemption 5 is inapplicable since the records reflect the agency's adoption of a particular interpretation of law. Pl.'s Opp'n Mem. Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 18, at 2, 4. Neither party addresses fully the application of the prerequisites for the invocation of Exemption 5 to the requested records, or the extent to which the attorney work product doctrine applies to attorney compilations of records, such as the Brief Bank, as a general aid and not in response to any specific claim. In the discussion that follows, the Court first examines these two issues, which are key to resolving the instant motion, and then evaluates the defendant's withholding of the Brief Bank as a whole and its component categories of records.

### A. Exemption 5 and the Work Product Doctrine

Under Exemption 5, agencies are not required to disclose in response to a FOIA request "matters that are . . . inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Two conditions must be met for a record to qualify for this exemption and be withheld: "its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the

agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n* ("*Klamath Water*"), 532 U.S. 1, 8 (2001); *see also Nat'l Inst. Of Military Justice v. Dep't of Defense*, 512 F.3d 677, 680, 680 n.4 (D.C. Cir. 2008) (noting records withheld under Exemption 5 must be inter- or intra-agency records "'unavailable by law' under one of the established civil discovery privileges."). The Supreme Court has explained that "the first condition of Exemption 5 is no less important than the second; the communication must be 'inter-agency or intra-agency.'" *Klamath Water*, 532 U.S. at 9.

The second condition incorporates those civil discovery privileges enjoyed by any private party in litigation, including the attorney-client and attorney work-product privileges. *See id.* at 8; *NLRB v. Sears, Roebuck & Co.* ("*Sears*"), 421 U.S. 132, 149 (1975); *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006); *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001). Nevertheless, "[i]n keeping with the Act's policy of the fullest responsible disclosure . . . Congress intended Exemption 5 to be as narrow as is consistent with efficient Government operations." *FTC v. Grolier, Inc.*, 462 U.S. 19, 23 (1983)**;** *see also Sears*, 421 U.S. at 149 ("[I]t is reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context."); *Coastal States Gas Corp. v. U.S. Dep't of Energy ("Coastal States")*, 617 F.2d 854, 862 (D.C. Cir. 1980) ("The clear purpose of FOIA is to assure that the public has access to all government documents, subject to only nine specific limitations, to be narrowly interpreted.").

The starting place for evaluating the scope of the attorney work-product doctrine is Federal Rule of Civil Procedure 26(b)(3), which protects "ordinarily," those "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . ." FED. R. CIV. P. 26(b)(3)(A). Rule 26 provides differing levels of

protection for fact and opinion work product. In the civil discovery context, the protection

afforded to "fact" work product is qualified and may be overcome when the requesting party

shows that the material sought is relevant and that "it has a substantial need for the materials to

prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other

means." Fed. R. Civ. P. 26(b)(3)(A)(i-ii). "Opinion" work product is given more absolute

protection. Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials [for

which a party has a substantial need], it must protect against disclosure of the mental

impressions, conclusions, opinions, or legal theories of a party's attorney or other representative

concerning the litigation.").

The procedural distinction made between fact and opinion work product in civil

discovery is "irrelevant" in the FOIA context. *Grolier, Inc.*, 462 U.S. at 27. As the Supreme

Court explained, "It makes little difference whether a privilege is absolute or qualified in

determining how it translates into a discrete category of documents that Congress intended to

exempt from disclosure under Exemption 5. Whether its immunity from discovery is absolute or

qualified, a protected document cannot be said to be subject to 'routine' disclosure." *Id*. For

purposes of withholding FOIA requested records, the "test under Exemption 5 is whether the

documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *Id*. at 26

(quoting *Sears*, 421 U.S. at 148-149. ); *see also Williams & Connolly v. SEC*, 662 F.3d 1240,

1243 (D.C. Cir. 2011) ("Although work product protection may be overcome for cause in civil

cases . . . any materials disclosed for cause are not 'routinely' or 'normally' discoverable and, for

that reason, are exempt under FOIA.") (citation omitted); *Stonehill v. IRS*, 558 F.3d 534, 538-539

(D.C. Cir. 2009) (noting that "not all documents available in discovery are also available

pursuant to FOIA" since "case-specific exceptions can sometimes permit discovery of otherwise

privileged material"); *Lardner v. U.S. Dep't of Justice*, No. Civ.A.03-0180, 2005 U.S. Dist. LEXIS 5465, at *6 (D.D.C. Mar. 31, 2005) (citing the "divide between the rules of FOIA and civil discovery," and noting that "[t]here will be many cases in which a document should be withheld under Exemption 5 of FOIA because it falls 'within the ambit' of a privilege, but the document nonetheless would be discoverable in certain circumstances in civil litigation"); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 800 F. Supp. 2d 202, 211 n.7 (D.D.C. 2011) (distinction between "fact" work product and "opinion" work product does not apply in FOIA context since protection of Exemption 5 extends to both).

In applying the work product doctrine, the D.C. Circuit has instructed that, it "should be interpreted broadly and held largely inviolate." *Judicial Watch v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005). This is consistent with the policy underpinnings articulated by the Supreme Court that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). The work-product doctrine can apply to preparatory work performed not only by attorneys, but also, in some circumstances by nonlawyers, *United States v. Nobles*, 422 U.S. 225, 238-239 (1975), and "does not distinguish between factual and deliberative material," *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987). This is because, in the context of work product, the risk is apparent that an attorney's discussion of factual matters may reveal his or her tactical or strategic thoughts. *See Mervin v. FTC*, 591 F.2d 821, 825-26 (D.C. Cir. 1978) (noting that "even the factual material segregated from attorney work-product is likely to reveal some of the attorney's tactical and strategic thoughts" and that while "pure statements of fact" are not exempt "from disclosure by calling them attorney work-product . . . material which might disclose an attorney's appraisal of factual evidence is attorney work-product exempted

from disclosure by exemption 5").  Thus, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5."  *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).

Moreover, in the FOIA context, the temporal relationship between the document at issue and the litigation for which the document was prepared is irrelevant.  As the Supreme Court held in *Grolier*, 462 U.S. at 28**,** "under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared.  Only by construing Exemption 5 to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered."  As a consequence, work product materials may enjoy protection not only "when the litigation with regard to which the work product was prepared is still in progress," *id*., but also when that claim has been resolved.  *Id*. at 29.  The Supreme Court elaborated on the reason for the expansive temporal scope of the work product doctrine, explaining that

> disclosure of work product connected to prior litigation can cause real harm to the interests of the attorney and his client even after the controversy in the prior litigation is resolved.  Many government agencies, for example, deal with hundreds or thousands of essentially similar cases in which they must decide whether and how to conduct enforcement litigation.  Few of these cases will be "related" to each other in the sense of involving the same private parties or arising out of the same set of historical facts; yet large classes of them may present recurring, parallel factual settings and identical legal and policy considerations.  It would be of substantial benefit to an opposing party (and of corresponding detriment to an agency) if the party could obtain work product generated by the agency in connection with earlier, similar litigation against other persons.  He would get the benefit of the agency's legal and factual research and reasoning, enabling him to litigate "on wits borrowed from the adversary."  Worse yet, he could gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled.

*Id*. at 30-31 (internal citations omitted).

Despite its breadth, particularly as applied under Exemption 5, the work-product doctrine has important limits that are noteworthy for their application in this case. First, as a threshold matter, "[t]he work-product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978) (en banc), *disapproved on other grounds by Crooker v. U.S. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc). Indeed, as the Supreme Court recognized in *Hickman*, not "all written materials obtained or prepared by an adversary's counsel with any eye toward litigation are necessarily free from discovery in all cases." 329 U.S. at 511. Thus, "the [work-product] privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1515 (D.C. Cir. 1993)).

Second, critical to eligibility for protection under the work product doctrine is that "it has uniformly been held to be limited to documents prepared in contemplation of litigation." *Coastal States*, 617 F.2d at 864. The lack of a temporal limitation on the protection of the work product doctrine, combined with the continuing necessity of showing that the materials for which such protection is sought were created "in anticipation of litigation or for trial," FED. R. CIV. P. 26(b)(3)(A), however, presents unique challenges in circumstances where the materials, as here, were not created for the purposes of a specific litigation or even for a particular claim that might arise in multiple cases. As the Supreme Court recognized in considering how the discovery rules apply under Exemption 5, "[d]rawing such a line between what may be withheld and what must be disclosed is not without difficulties." *EPA v. Mink*, 410 U.S. 73, 86 (1973), *superseded on other grounds by CIA v. Sims*, 471 U.S. 159 (1985). In evaluating which side of the line the

material falls on, courts must be mindful that the work product doctrine, as broad as it may be, "is not endless." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, No. 11-1021, 2013 U.S. Dist. LEXIS 104168, at *12 (D.D.C. July 25, 2013). Moreover, **"if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'"** *Id*. (*quoting Senate of the Com. of P.R.*, 823 F.2d 574, 586-87 (D.C. Cir. 1987)).

"In this Circuit, it is still somewhat unclear how specifically a party must anticipate litigation in order to invoke the work-product doctrine . . . ." *United States v. ISS Marine Servs.*, 905 F. Supp. 2d 121, 135 (D.D.C. 2012). There are two distinct lines of authority in the Circuit, with one line holding "the documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind," *Coastal States*, 617 F.2d at 865, and the other holding the doctrine protects "documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. U.S. Dep't of Navy*, 131 S. Ct. 1259 (2011).

The Circuit has reconciled these two apparently divergent lines by noting that documents must meet the "specific claim" standard if "the documents at issue [are] prepared by government lawyers in connection with active investigations of potential wrongdoing." *In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998). On the other hand, if the lawyer is "render[ing] legal advice in order to protect the client from future litigation about a particular transaction," no specific claim need have arisen. *Id.* This Circuit takes a functional approach to the analysis of documents for which the attorney work-product doctrine is asserted, asking "whether, in light of the nature of the document and the factual situation in the particular case, the document can

fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at 884

(quoting *Senate of P.R.*, 823 F.2d at 586 n.42).  To meet this standard, a party "must at least have

had a subjective belief that litigation was a real possibility, and that belief must have been

objectively reasonable" in the circumstances.  *Id*. at 884 n.5.  The proponent of work-product

protection bears the burden of demonstrating that the prospect of litigation was an independent,

legitimate and genuine purpose for the document's creation.

In the FOIA context, as the parties concede, "[i]f a document is fully protected as work

product, then segregability is not required."  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432

F.3d 366, 371 (D.C. Cir. 2005).  Set against these legal principles, the question to be resolved is

whether the Brief Bank is "fully protected" as attorney work-product, as the defendant contends,

and, if it is, no part of it need be released under Exemption 5.

## B.    The Brief Bank As A Whole

As noted at the outset, the parties do not address whether the Brief Bank satisfies the first

condition for withholding under Exemption 5.  This is not an insignificant point since briefs filed

in federal courts, which are not "agencies," *see* 5 U.S.C. § 551(1)(B) (defining "agency" as *not*

including "the courts of the United States"), are, by definition, communicated outside the agency

and, thus, do not meet the first condition of being either inter- or intra-agency memoranda. *See*

*Klamath Water*, 532 U.S. at 9 (noting, in reference to Exemption 5's categorization of inter- and

intra-agency memorandums, "[s]tatutory definitions [of agency] underscore the apparent

plainness of this text.").  The plaintiff implicitly points this out by noting that briefs filed in

federal courts are public, but relies on this point to support his separate argument that publicly-

known information cannot be withheld under any Exemption.  *See* Pl.'s Opp'n at 2–3.

The defendant glosses over this issue and relies on the fact that the Brief Bank "is only

accessible by DOJ personnel as it is maintained on an intranet website" in an effort to shoehorn

the Brief Bank into the definition of an "intra-agency memorandum." *See* Def.'s Mem. at 3. This begs the question of whether the contents of the Brief Bank, no matter where those contents are stored, meet the first condition of Exemption 5. Rather than focus on the contents of the Brief Bank, the defendant focuses on this compilation as a whole, asserting that the "brief bank was developed by an attorney to act as tool to aide others in anticipation of future FOIA litigation." Def.'s Reply Pl.'s Opp. Def.'s Mot. Summ. J. ("Def.'s Reply"), ECF No. 18, at 10; *see also* Vanek Decl. ¶ 26. By so doing, the defendant collapses the two conditions for Exemption 5 withholding into a single inquiry: if the Brief Bank as a whole is cloaked with the protection of the work product privilege, then no matter how publicly disseminated its contents, Exemption 5 applies because this resource is only accessible to the defendant's personnel. Therefore, before addressing the specific categories of documents that make up the Brief Bank, the Court must first determine whether the act, by a government attorney, of compiling the Brief Bank is sufficient to protect the entire contents under the work product doctrine and make the defendant's withholding under Exemption 5 proper. The Court finds it does not.

It is certainly true that, under some circumstances, "an attorney's compilation of various documents, each of which is itself a proper subject of discovery, constitutes an attorney's opinion work product subject to protection." *Willingham v. Ashcroft*, 228 F.R.D. 1, 6 (D.D.C. 2005). Indeed, *Hickman* states that "[p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 511. Thus, there is a clear policy rationale for protecting the compilation of records itself if failure to do so would mean "the interests of clients and the cause of justice would be poorly served." *Id.*

Just as every document prepared by an attorney is not entitled to work product protection, not every compilation by an attorney is protected either. A crucial factor in determining whether the work-product doctrine applies to a compilation is whether the attorney's selection of the contents could reveal or provide insights into the "mental processes of the attorney" in the analysis and preparation of a client's case. *Klamath,* 532 U.S. at 8; *Nobles*, 422 U.S. at 238 ("[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). The work product doctrine, at its core, is intended "to encourage effective legal representation within the framework of the adversary system by removing counsel's fears that his thoughts and information will be invaded by his adversary." *Jordan*, 591 F. 2d at 775. Thus, when the act of culling, selecting or ordering documents reflects the attorney's opinion as to their relative significance in the preparation of a case or the attorney's legal strategy, then the work product doctrine may appropriately shield their disclosure. *See, e.g.*, *Sporck v. Peil*, 759 F.2d 312, 316-17 (3d Cir. 1985) (holding that selection of a "few documents out of thousands" produced in discovery and used to prepare a witness for a deposition was attorney work-product protected). On the other hand, compilations that merely reflect information, which is already or may be available to an adversary, or has no implications for the adversary process, are not entitled to protection. *See, e.g.*, *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1016 (1st Cir. 1988) (holding that where "the lawyer has had no justifiable expectation that the mental impressions revealed by the materials will remain private" there is no reason for the work-product doctrine to apply); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410–11 (S.D.N.Y. 2009) ("compilations of documents that support the factual allegations of a complaint reveals no more than that already revealed by the filing of the complaint" and not protected by work-

product doctrine); *SEC v. Strauss*, No. 09 Civ. 4150, 2009 U.S. Dist. LEXIS 101227, at *10 (S.D.N.Y. Oct. 28, 2009) ("Shared access to the electronic working paper database" did not create work-product concern since this "would not identify the type of coherent, consciously arranged, static set of documents" subject to work-product protection, but only reveal a list of documents that the adversary viewed on "ad hoc" basis).

In concluding that the Brief Bank as a whole does not warrant work product protection and withholding under Exemption 5, the Court looks to two key considerations: first, whether disclosure of the Brief Bank would reveal mental processes and strategy to adversaries in future FOIA litigation involving the defendant; and, second, the inter-related factor of whether the Brief Bank "can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d at 885 (internal quotation marks omitted).

With respect to the first consideration, the Court focuses on the level of selectivity employed by the government attorney in compiling the Brief Bank. In undertaking this task, the Court is hindered by the paucity of information provided by the defendant about the level of selectivity, if any, involved in the creation and maintenance of the Brief Bank. The defendant merely states that "specific cases" were selected "for inclusion in the brief bank." Vanek Decl. ¶ 26. There is no description of how many cases are included or over what period of time; the criteria, if any, used to select cases for inclusion; or how often the Brief Bank is updated or accessed by users. Indeed, what little information that can be gleaned from the defendant's filings indicates that the Brief Bank is a "resource" for the attorneys at EOUSA. *See* Def.'s Mem. Ex. A, ECF No. 12-2, at 8 (citing the intranet web address as falling within the "research_resources" section). A highly selective Brief Bank with few briefs contained in it could hardly function as a "resource" for the EOUSA FOIA and Privacy Act staff. Rather, to be

as useful "a tool to aide others in" litigating FOIA cases, Def.'s Reply Mem. at 2, and serve as an effective resource, the Brief Bank would presumably contain briefs in cases from every federal circuit or district and be as comprehensive as possible. At the same time, the larger the collection of cases in the Brief Bank and the more voluminous the number of briefs, the more difficult it would be to show that disclosure of this compilation would reveal any effective information about any legal thought processes or strategies on the part of the defendant. *Accord Miller v. Holzmann*, 238 F.R.D. 30, 32 (D.D.C. 2006) ("the number of documents that were scanned, approximately 20,000, is so large that it would be difficult to conceive of [the defendant] gleaning plaintiffs' trial strategy solely by virtue of plaintiffs' disclosing the identity of the documents."); *Wash. Bancorporation v. Said*, 145 F.R.D. 274, 277 (D.D.C. 1992) (attorney created index that spanned four volumes and hundreds of pages in reference to thousands of documents contained in 2,400 boxes made it virtually impossible to glean any litigation strategy).[4]

Even if the Brief Bank contained only a few, highly selective briefs, coverage by the work product doctrine would still be a stretch. The "legal theories" contained in the Brief Bank's selection are representative of information "that, even absent compelled disclosure . . . will probably come to light during the course of trial, if not before." *In re San Juan Plaza Hotel Fire Litig.*, 859 F.2d at 1016. The Brief Bank is a resource to be used to craft pleadings that will be filed in FOIA litigation around the country. *See* Vanek Decl. ¶ 17. Unlike witness interview statements or other materials prepared by attorneys as part of an assessment of a client's potential claims or legal liability, which materials may never become public, the briefs and cases in the Brief Bank are, by definition, materials that have already been revealed in the course of

---

[4] Both *Miller* and *Washington Bancorporation* were civil discovery cases not involving FOIA requests and the court concluded that the documents requested in discovery constituted fact work product because they were created in connection with specific litigation and were subject to disclosure due to the substantial need of the requesting party.

FOIA litigation and "would probably be revealed in due course" through repetition in filings in other court cases. *In re San Juan Plaza Hotel Fire Litig.*, 859 F.2d at 1016. A Brief Bank that "would likely remain inviolate in the bosom of the" EOUSA would hardly qualify as a "resource" for attorneys. *Id.* Thus, the first consideration militates strongly against the defendant's argument that the Brief Bank as a whole is attorney work product.

With respect to the second consideration, the defendant does not argue that the Brief Bank was compiled for any specific claim or case but has made only the conclusory statement that the Brief Bank was compiled "in anticipation of future FOIA litigation." Def.'s Reply Mem. at 2. While the work product doctrine may shield documents from disclosure even when no specific claim has yet arisen, *see In re Sealed Case*, 146 F.3d at 885; *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992); *Delaney, Migdail & Young, Chartered v. IRS,* 826 F.2d 124, 127 (D.C. Cir. 1987), as noted, the defendant must nonetheless show that based on the nature of the documents at issue and the context in which they were created, they "can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d at 884 (internal quotations omitted). The "prospect of litigation" cannot be read over-broadly to be so divorced from any specific legal claim such that it renders this fundamental criterion for invocation of the work product doctrine meaningless.

The defendant has not cited any particular litigation for which the Brief Bank was prepared; it merely states it is "a tool for use in anticipated FOIA litigation." Vanek Decl. ¶ 17. Considering that "[e]ach fiscal year, agencies receive and process thousands of requests," it goes without saying that the EOUSA's FOIA staff will be involved in FOIA litigation in the future. *See Frequently Asked Questions*, www.foia.gov/faq.html (last visited September 18, 2013). Yet, the mere inevitability of the defendant's involvement in FOIA litigation, for which the Brief

Bank may be a useful tool, does not convert the Brief Bank into protected attorney work-product. The nature of the contents of the Brief Bank, consisting of publicly-filed cases and briefs addressing the myriad issues that have arisen in FOIA litigation, is necessarily general in order to serve as a resource to agency lawyers litigating FOIA cases. This very generalness not only defeats a finding that disclosure would reveal the thought processes of the attorney compiling the Brief Bank, but also defeats a finding that the compilation is sufficiently tethered to any anticipated litigation. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012) (work-product protection denied to agency attorney's PowerPoint slideshow used to educate agency employees about adjudications, noting that "[w]hile those slides [were] literally 'in anticipation of litigation'… they [did] not anticipate litigation in the manner that the privilege requires" since the attorneys "were not worrying about litigation ensuing from any 'particular transaction,'. . . nor . . . assembling information, sifting through facts, preparing legal theories, or planning strategy for [the agency] case" but, rather, the "slides convey[ed] routine agency policies" which "happen to apply in agency litigation").

The defendant's withholding here raises the specter of reading Exemption 5 "over-broadly," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991), against which the D.C. Circuit warned because "if the agency were allowed 'to withhold any document prepared by any person in the government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" *Senate of the Com. of P.R.*, 823 F.2d at 587 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 865).

Consequently, the Court rejects the defendant's argument that the entire Brief Bank is cloaked with the protection of the attorney work-product doctrine and is subject to withholding under Exemption 5. Therefore, it is necessary to examine each component part of the Brief Bank

to determine if any component, taken individually, is properly exempt from disclosure as attorney work-product.

###    C.    The Component Records In The Brief Bank

The Brief Bank is made up of six components, which fall into two broad categories: court documents, which include "selected filings from FOIA lawsuits," "basic case-caption information," "the author of the brief, the date it was filed, and . . . the specific component of the Department of Justice in which the author of the brief works," and "supporting declarations that formed the factual foundation of the brief," Vanek Decl. ¶¶ 18–19, 21–22; and summary documents, which include "a brief summary of the issues involved" in a given case and "what the author of the brief bank considered 'key issues,'" *id.* ¶¶ 19–20. The discussion below addresses whether each of these broad categories satisfy the two conditions for invocation of Exemption 5.

###    1.    *Court Documents*

As for the first category, court documents, it is clear that such records are not "inter-agency or intra-agency memorandums" within the meaning of Exemption 5. All of the court documents in the Brief Bank were filed in "FOIA lawsuits filed around the country in both the various United States District Courts and the Circuit Courts of Appeal." Vanek Decl. ¶ 18. The courts are not an "agency" within the meaning of the FOIA. *See* 5 U.S.C. § 551(1)(B) ("'[A]gency' means each authority of the Government of the United States . . . but does not include . . . the courts of the United States."). Thus, by definition, any document filed in a federal court is not an inter-agency or intra-agency memorandum because the destination of the document is not an "agency." *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 147–48, 155 (1989) (finding publicly available court decisions in possession of Federal agency were "agency records" for purposes of FOIA and were not subject to any exemption). Consequently,

Exemption 5 does not apply to any of the court documents and they may not be withheld on this statutory basis. *See Klamath Water*, 532 U.S. at 12 n.3 ("Because we conclude that the documents do not meet this threshold condition, we need not reach step two of the Exemption 5 analysis and enquire whether the communications would normally be discoverable in civil litigation.").[5]

### 2. *Summary Documents*

The remaining components records of the Brief Bank are the summary documents. This category of documents, consisting of the summaries of cases and key issues in certain cases, are generated by a government attorney and accessible in the Brief Bank only to the defendant's personnel. Consequently, the summary documents meet the threshold condition for application of Exemption 5 as being an "intra-agency memorandum." Thus, the issue raised by these summary documents is whether they are protected by the attorney work-product doctrine.

The underlying policy rationale for the attorney work-product doctrine namely, ensuring an attorney has "a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," *Hickman*, 329 U.S. at 510, must be considered in addressing what is a close question. The Court is mindful that the defendant has a strong interest in its lawyers not being forced to "keep their thoughts to themselves, avoid communicating with other lawyers, and hesitate to take notes." *In re Sealed Case*, 146 F.3d at 884. At first blush, the summaries of cases and the identification of key issues in certain cases seem to satisfy the description set forth in *In re Sealed Case,* namely, that they reflect the notes of a government attorney. Yet, the cases in this Circuit have made clear it is the strategy and thought processes of the attorneys generating

---

[5] Even if it were possible that court filings were inter- or intra-agency memoranda within the meaning of Exemption 5, any work-product privilege would necessarily have been waived by the very act of filing them with the court. *See Judicial Watch v. United States Postal Serv.*, 297 F. Supp. 2d 252, 269 (D.D.C. 2004) ("[I]f USPS attorneys prepared these documents to respond to litigation, and had filed substantially similar materials with a court such that they were publicly available, USPS would have waived the [work-product] privilege.").

the work-product that the doctrine seeks to protect. Neutral summaries of the legal holdings of cases and the issues they present in stand-alone documents, untethered to any particular claim in litigation, do not qualify for work product protection, even when the documents discuss legal issues arising in agency litigation. For instance, in *Coastal States,* the Department of Energy ("DOE") invoked Exemption 5's work-product protection to withhold memoranda from DOE regional attorneys regarding interpretations of regulations that had been requested by agency auditors needing guidance "within the context of particular facts encountered while conducting an audit of a firm." 617 F.2d at 858. The majority of the memoranda at issue were not "formal" interpretations of regulations nor binding on audit staff, but "neutral, objective analyses of agency regulations," resembling "question and answer guidelines which might be found in an agency manual." *Id.* at 863. The D.C. Circuit rejected DOE's blanket assertion of the work-product doctrine with respect to the documents, holding that the agency could assert work-product protection only where it had established that "a specific claim had arisen, was disputed, . . . and was being discussed in the memorandum." *Id.* at 866.

By contrast, in *Judicial Watch v. U.S. Dep't of Justice*, which the defendant cites extensively, the documents at issue were emails "written by and/or to attorneys in relation to the *Boim* case or other litigation involving designated foreign terrorist organizations." *Judicial Watch*, 432 F.3d at 368. The documents in *Judicial Watch* were specific in the strategy they discussed, namely, whether the Department of Justice should file an amicus brief in an existing case and, if so, what the Department's position should be. *See id.* at 367-68; *see also Cause of Action v. FTC*, No. 12-cv-850, 2013 WL 4406875, at *17 (D.D.C. Aug. 19, 2013) (finding work product exemption properly applied where agency showed that memoranda were "prepared by

[a] paralegal under the direction of an attorney and in anticipation of litigation specifically with

Plaintiff, over Plaintiff's FOIA requests and the agency's responses to those requests.").

Another judge on this Court has succinctly distilled the guidance in this Circuit pertinent

to the analysis of when a document satisfies the prerequisite for work product protection of being

prepared in anticipation of litigation, stating that

> [t]he Circuit has drawn a line between neutral, objective analyses of agency
> regulations and more pointed documents that recommend how to proceed further
> with specific investigations or advise the agency of the types of legal challenges
> likely to be mounted against a proposed program, potential defenses available to
> the agency, and the likely outcome. Neutral, objective analysis is like an agency
> manual, fleshing out the meaning of the law, and thus is not prepared in
> anticipation of litigation. More pointed advice, however, anticipates litigation.

*Am. Immigration Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221-222 (D.D.C.

2012) (internal quotation marks and citations omitted); *see also Judicial Watch v. U.S. Dep't of

Homeland Sec.*, 926 F. Supp. 2d 121, 142–43 (D.D.C. 2013) (finding documents consisting of

"general standards" designed to "convey agency policies and instructions regarding the exercise

of prosecutorial discretion" not covered by work-product doctrine because documents were not

prepared in "anticipat[ion of] litigation in the way the work-product doctrine demands").

Applying this guidance to the summary documents contained in the Brief Bank

demonstrates that they are not protected by the work-product doctrine. As the defendant

describes the summary documents, they merely summarize briefs or cases and key issues

identified in them. This description does not suggest that the summary documents reveal any

legal strategy or other case-specific legal considerations that might have implications for future

litigation if revealed to adversaries. Instead, these summary documents appear to be far more like

the "neutral, objective analyses" found to be unprotected by the work-product doctrine in

*Coastal States*. 617 F.2d at 863. They are akin to the "question and answer guidelines which

23

might be found in an agency manual," *id.*, and are merely a "tool" for the "EOUSA's FOIA and Privacy Act staff" to identify cases and briefs that might be similar to cases which could potentially arise in the future. Vanek Decl. ¶ 17. They are decidedly not like the withheld documents at issue in *Schiller* and *Delaney*. The *Schiller* documents were veritable "how to" manuals for building defenses and litigating cases under the Equal Access to Justice Act and disclosed explicit agency strategy. *See Schiller*, 964 F.2d at 1208. The *Delaney* documents were "memos advis[ing] the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome." *Delaney*, 826 F.2d at 127. In both *Schiller* and *Delaney*, the documents at issue provided advice to agencies or attorneys about how to conduct legal proceedings on specific anticipated claims against federal agencies. The documents at issue here are merely summaries without the sort of step-by-step advice provided in the *Schiller* and *Delaney* documents. The summary documents do not contain "arguments" – those are presumably contained in the briefs which, as established above, are already publicly filed. Simply put, the Brief Bank is merely a catalog of publicly available documents with some neutral descriptions of its contents, much like "an agency manual, fleshing out the meaning of the statute it was authorized to enforce." *Id.*

The defendant has utterly failed to sustain its burden in asserting work-product protection for the documents contained in the Brief Bank. This Court has previously found that a mere "boilerplate statement that the document 'contains comments and recommendations' and that it was withheld 'as an attorney work product' because it 'was prepared in anticipation of litigation'" was insufficient to support a work-product exemption. *See Nat'l Sec. Counselors v. CIA*, Nos. 11-443, 11-444, 11-445, 2013 WL 4111616, at *77–78 (D.D.C. Aug. 15, 2013) (citations omitted); *Citizens for Responsibility and Ethics in Wash.*, No. 11-1021, 2013 WL

3835061, at *13 (D.D.C. July 25, 2013) ("the work-product prong of Exemption 5 requires that agencies make a goodfaith [sic] effort to describe the nature of each individual document and the particular circumstances that make its use in litigation foreseeable."); *Am. Immigration Council v. Dep't of Homeland Sec.*, No. 12-856, 2013 WL 3186061, at *17 (D.D.C. June 24, 2013). In this case, the defendant has provided only conclusory statements completely insufficient to allow the Court to engage in the "attentive judicial review of agency exemption claims" demanded by the FOIA. *See Senate of the Comm. of P.R.*, 823 F.2d at 587. Accordingly, the defendant's bare assertion of attorney work-product protection over the summary documents in the Brief Bank is insufficient to justify withholding under Exemption 5.[6]

## IV. CONCLUSION

For the foregoing reasons, the defendant has not carried its burden of showing that the Brief Bank as a whole or its component records are protected by the attorney work-product doctrine and, consequently, withholding these records under Exemption 5 in response to the plaintiff's FOIA request was improper. Therefore, the defendant's motion for summary judgment is DENIED. The parties are directed to submit to the Court by October 18, 2013 a joint status report that addresses the timeframe for making the Brief Bank available to the plaintiff and any anticipated further proceedings in this case.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 18, 2013

_____
BERYL A. HOWELL
United States District Judge

---

[6] The plaintiff also argues that the Brief Bank must be disclosed under the "adoption as agency policy" doctrine. *See* Pl.'s Opp'n at 4–11. It is unnecessary to address this argument since the Court resolves the pending motion on an alternative basis that the only proffered rationale for withholding the Brief Bank, namely, the attorney work-product doctrine, is inapplicable.